1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC WILTON BURTON,

11             Plaintiff,                    No. 2:11-cv-2187 KJN P

12        vs.

13   M. McDONALD, et al.,               <u>ORDER</u> and

14             Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16              Plaintiff is a state prisoner, incarcerated at High Desert State Prison ("HDSP"),

17   who proceeds, without counsel and in forma pauperis, with a complaint filed pursuant to 42

18   U.S.C. § 1983, and the Americans with Disabilities Act ("ADA").  This action proceeds on the

19   original complaint (Dkt. No. 1), against defendants McDonald and Gower.  Presently pending

20   are:  (1) plaintiff's motion for preliminary injunctive relief (Dkt. No. 11); and (2) defendants'

21   motion to dismiss the complaint (Dkt. No. 19).  For the reasons that follow, this court grants

22   defendants' motion to dismiss the complaint, grants plaintiff leave to file an amended complaint,

23   and recommends that plaintiff's motion for preliminary injunctive relief be denied.

24   I.  <u>Introduction</u>

25              This action proceeds against defendants M. McDonald (former HDSP Warden),

26   and R. L. Gower (former HDSP Chief Deputy Warden), based on the following allegations.  The

court recounts plaintiff's brief complaint in full (Dkt. No. 1 at 2-3 (excluding 39 pp. exhibits)):

> R.L. Gower, Chief Deputy Warden HDSP -- subordinate directly under policy of Warden M. McDonald within chain of command as individual person effecting Warden M. McDonald's policies encouraging deprivation and violation of plaintiff's federally guaranteed U.S. Const. 8th & 14th Amends. rights, acting under color of state law within CDCR [California Department of Corrections and Rehabilitation].

> Mr. M. McDonald (Warden) who knew that plaintiff is an asthmatic and having high altitude syndrome, by way of previous meeting of the minds, and lawsuit 2:10cv-01281 GGH, continues to enforce the policies that encourage and injured plaintiff, by depriving him of effective medical care and treatment, adequate healthy housing, and unreasonable delay to his serious medical and housing needs, exposing plaintiff to toxic sewage pollutants x 2 months approx. causing respiratory distress, pain, SOB [shortness of breath], infection of sinuses, irritating eyes, and lungs from approx. June 20, 2011, to August 9, 2011.  See Attached 602.

> [Relief Requested:]  Clean and disinfect cell, relocate plaintiff to a clean healthy environment, order defendant to transfer plaintiff to a beneficial lower altitude climate, as plaintiff suffers continuously and unreasonably from high altitude syndrome, which can be relieved by a transfer.  Contaminated cell exposes plaintiff to biological pathogens, causes asthma spasms, headaches, disturbs sleep.  Plaintiff will continue to suffer irreputable [sic] harm if court doesn't intervene urgently "imminent danger" and risk injuries.

Attachments to the complaint include copies of plaintiff's previously-filed action in this court, <u>Burton v. McDonald</u>, Case No. 2:10-cv-01281 GGH), and two relevant administrative grievances.  Pursuant to the most recent grievance, filed on July 7, 2011 (Log No. HDSP-11-01087), plaintiff sought inspection and repair of the plumbing in his cell to eliminate the alleged raw sewage problem.  The grievance was granted pursuant to Second Level Review, on July 14, 2011, with a notation that a plumber had "cleaned out your sink and drain, and has replaced the plug in the plumbing line."  Although plaintiff sought further review, the appeal was cancelled at the Director's Level Review because it had been "resolved at a previous level." (Dkt. No. 1 at 4-13.)

////

Plaintiff's previously-filed administrative grievance, submitted as an attachment to his prior civil action, challenged the quality of plaintiff's medical care, complained of the smoke associated with HDSP's Native American religious ceremonies, and requested a transfer to another institution.  (Dkt. No. 1 at 11-24 (Log No. HDSP-31-09-14719).)  The grievance was exhausted at the Director's Level, on April 24, 2010; that decision states in pertinent part that plaintiff's grievance was denied because plaintiff refused to take steroid inhalers to optimize the medical treatment for his asthma, that plaintiff's asthma could be adequately treated at HDSP, and that plaintiff "could choose not to be out in the A-Yard near the vicinity of the Native American smoke house religious ceremonies during ceremony times."  (Id. at 12.)

II.  Plaintiff's Motion for Preliminary Injunction

    A.  Background

Presently pending is plaintiff's second motion for preliminary injunctive relief. On September 19, 2011, the court denied without prejudice plaintiff's first motion for preliminary injunctive relief, as sought both in plaintiff's complaint (Dkt. No. 1), and by separate motion (Dkt. No. 6).  While acknowledging plaintiff's allegation that he was in "imminent danger of respiratory arrest" (Dkt. No. 1 at 1), the court denied plaintiff's motion on the following grounds (Dkt. No. 8 at 4):

> The claims on which plaintiff's motion is predicated are also contained in his complaint; moreover, plaintiff seeks, in both matters, the same relief against the same parties.  As previously noted, if plaintiff's allegations are proven, he has a reasonable opportunity to prevail on the merits of this action.  Thus, it appears, at least initially, that preliminary injunctive relief may be required to preserve plaintiff's health pending a final decision on the merits of this action.
>
> However, the court notes that plaintiff previously filed, in 2010, an action that included similar claims, which plaintiff voluntarily dismissed.  (See Burton v. McDonald, Case No. 2:10-cv-01281 GGH.)  In his 2010 case, plaintiff sought, in pertinent part, injunctive relief requiring defendants to refrain "from exposing plaintiff . . . to smoke, pollutants, dust from vents, as plaintiff is an asthmatic, and cannot acclimate to high desert prison environment. Request court order Warden McDonald to transfer plaintiff to a

reasonable accommodated facility posthaste to prevent present and future respiratory injuries." (<u>Id.</u>, Dkt. No. 1 at 6.)  Plaintiff sought a "protective order" directing his transfer "out of HDSP to another prison." (<u>Id.</u>)

The similarity of plaintiff's claims in the instant action, with the claims he asserted in his 2010 case, which plaintiff voluntarily dismissed, casts doubt on the alleged urgency of plaintiff's motion for preliminary injunctive relief.  The court will therefore deny the instant motion without prejudice to plaintiff filing a new motion for preliminary injunctive relief that includes an explanation how plaintiff's current circumstances are different, if at all, than when he withdrew his 2010 case.

In the presently pending motion for preliminary injunctive relief, plaintiff explains that he withdrew his prior action (<u>Burton v. McDonald</u>, Case No. 2:10-cv-01281 GGH), because he thought he was going to be transferred from HDSP.  Plaintiff further states that, in addition to the problems challenged in his prior action, plaintiff now faces the additional problem of being exposed to raw sewage and the resulting "mold and disease causing pathogenic organisms, including microbals" (Dkt. No. 11 at 3), and that he has been unsuccessful in his efforts to remedy these problems or obtain a cell transfer.  Plaintiff asserts that his health is so adversely impacted that he fears he "may possibly suffer respiratory arrest, stroke or death . . . ." (<u>Id.</u> at 4.)

Upon review of this motion, the court, in an abundance of caution, directed the Attorney General to file and serve a response to plaintiff's motion for preliminary injunctive relief, and accorded plaintiff an opportunity to reply.  (Dkt. No. 13.)  The Attorney General filed an opposition (Dkt. No. 16); and plaintiff replied (Dkt. No. 17).

B. <u>Legal Standards</u>

A preliminary injunction should not issue unless necessary to prevent threatened injury that would impair the court's ability to grant effective relief in a pending action.  Fed. R. Civ. P. 65; <u>Sierra On-Line, Inc. v. Phoenix Software, Inc.</u>, 739 F.2d 1415, 1422 (9th Cir. 1984); <u>Gon v. First State Ins. Co.</u>, 871 F.2d 863 (9th Cir. 1989).  A preliminary injunction represents the exercise of a far reaching power not to be indulged except in a case clearly warranting it.  <u>Dymo Indus. v. Tapeprinter, Inc.</u>, 326 F.2d 141, 143 (9th Cir. 1964).  "The proper legal standard for

preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009), quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). "Under the 'sliding scale' approach to preliminary injunctions observed in this circuit, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another. At an irreducible minimum, though, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." Pimentel v. Dreyfus, 670 F.3d 1096, 1105-06 (9th Cir. 2012) (citations, internal quotations and punctuation omitted). In cases brought by prisoners involving conditions of confinement, any preliminary injunction "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm." 18 U.S.C. § 3626(a)(2).

The principal purpose of preliminary injunctive relief is to preserve the court's power to render a meaningful decision pursuant to a trial on the merits. See 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2947 (2d ed. 2010). Implicit in this required showing is that the relief awarded is only temporary and there will be a full hearing on the merits of the claims raised in the injunction when the action is brought to trial. In addition, as a general rule, this court is unable to issue an order against individuals who are not parties to the suit pending before it. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).

C. Discussion

The Attorney General, on behalf of defendants, asserts that plaintiff has no medical need warranting his immediate transfer from HDSP, and addresses each of plaintiff's four principal concerns.

1           First, defendants assert that there is no information in plaintiff's medical file or

2    history to indicate that the elevation of HDSP has an adverse effect on plaintiff's respiratory

3    health.  Citing the attached declaration of Dr. B. Lee, M.D. (Dkt. No. 16-2), defendants assert

4    that, "Plaintiff's most recent Asthma Control Assessment Tool score was 21, which is above the

5    average score of 20.  (Lee Decl. ¶ 4.)  With a score of 21, Plaintiff has good control over his

6    breathing.  (Lee Decl. ¶ 4.)  Plaintiff was recently tested for oxygen saturation and his test results

7    came back at 99%.  (Lee Decl. ¶ 5.)  An individual is considered to have adequate oxygenation

8    when his/her level exceeds 96%.  (Lee Decl. ¶ 5.)  An individual with an oxygen saturation level

9    under 86% would need supplemental oxygen.  (Lee Decl. ¶ 5.)"  (Dkt. No. 16 at 2.)  Defendants

10   conclude that "[n]othing in Plaintiff's medical file indicates that the elevation in Susanville is

11   having any adverse effects on his health.  (Lee Decl. ¶ 6.)"  (Id.)

12          Second, citing the attached declaration of HDSP Litigation Coordinator R. Dreith,

13   defendants state that plaintiff's cell is not near the institution's sweat lodge.  Defendants explain,

14   "[t]here is, in fact, no sweat lodge located near Plaintiff's cell.  The facility where Plaintiff is

15   housed has only one sweat lodge.  (Dreith Decl. ¶ 8.)  The sweat lodge is outside in an open-air

16   area and is located three buildings away from Plaintiff's building.  (Dreith Decl. ¶¶ 8, 9, 10.)

17   Further, the sweat lodge is only run on the weekend, at the request of the inmates.  (Dreith Decl.

18   ¶ 11.)"  (Dkt. No. 16 at 2.)  Thus, defendants conclude that there is no evidence to support

19   plaintiff's claim that his cell is "near" a sweat lodge, and that the smoke from the lodge is

20   causing plaintiff serious respiratory harm.  (Id.)

21          Third, defendants assert that plaintiff's housing unit and cell are properly

22   ventilated, noting that "[t]he air ventilation system in Plaintiff's housing unit is being properly

23   maintained, and the air filter in Plaintiff's building [housing unit Facility A, Building 2] has been

24   recently replaced.  (Dreith Decl. ¶ 6 [referencing HDSP facility maintenance logs].)"  (Dkt. No.

25   16 at 3.)

26   ////

1    Fourth, and finally, defendants contend that plaintiff is not being exposed to raw

2    sewage.  Defendants note plaintiff's allegation that the wall near his toilet is leaking raw sewage.

3    However, defendants assert that HDSP maintenance staff conducted an inspection, cleaned out

4    the sink and drain in plaintiff's cell, and "replaced the plug in the plumbing line to ensure that no

5    sewage leaked into Plaintiff cell."  (Dkt. No. 16 at 3, citing Dreith Decl. at ¶¶ 4, 5.)

6    In reply, plaintiff first seeks to strike the declaration of R. Dreith, on the grounds

7    that he is not a party to this action, did not interview plaintiff before preparing his declaration,

8    and his declaration contains allegedly fraudulent statements.  However, it is well established that

9    a motion for preliminary injunction may be supported by "[e]vidence that goes beyond the

10   unverified allegations of the pleadings."  9 Wright & Miller, Federal Practice & Procedure §

11   2949 (2011).  A preliminary injunction may be granted on the basis of affidavits.  Ross–Whitney

12   Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 198 (9th Cir. 1953).  Here, the

13   declaration of R. Dreith, HDSP Litigation Coordinator, is signed under penalty of perjury, and

14   references matters that are objectively verifiable.  There is no basis for striking the declaration of

15   R. Dreith.

16   Plaintiff next responds to each of defendants' substantive arguments.  First,

17   plaintiff asserts that a one-time assessment of his oxygen saturation level should not be

18   dispositive.  He states that the declaration of Dr. Lee omits the alleged fact that plaintiff's oxygen

19   saturation level dropped to 77 "about 16 months ago," requiring emergency treatment.  (Dkt. No.

20   17 at 3.)

21   Second, plaintiff notes that "defendants acknowledge that there is open burning of

22   logs on the yard" (id.), and maintains that the resulting smoke adversely impacts his asthma.

23   Third, plaintiff asserts that, two weeks after R. Dreith signed his declaration,

24   plaintiff's air vent again stopped working.  Plaintiff states that, although he filed an emergency

25   administrative grievance, the vent was not restored until two days later.

26   ////

7

1    Fourth, plaintiff contends that, approximately one week after R. Dreith signed his

2    declaration, sewage water again leaked into plaintiff's cell.  Although the leak was fixed by

3    another inmate, plaintiff asserts that his cell has never been sampled for mold, and never been

4    decontaminated, both of which are allegedly imperative.

5    Plaintiff states that he "still suffers from runny eyes, morning nose bleedings, dry

6    sinuses, scratchy throat, headaches, dizziness, and continual daily and nightly episodes of SOB,

7    more likely than not caused by pathogenic organisms in his cell relative to the expos[ure] of raw

8    sewage contaminants in his cell and poor ventilation therein.  Dust permeates though vent, and

9    on powwow days, wind blown hazardous smoke penetrates the housing unit and ventilation

10   system, causing bronchial spasms and SOB."  (Dkt. No. 17 at 5.)

11   Finally, plaintiff notes that he is the inmate representative to the HDSP ADA

12   Subcommittee, and "many inmates complaint to plaintiff about the poor ventilation system, and

13   their respiratory problems, and the powwow smoke on the exercise yard."  (Dkt. No. 17 at 5.)

14   The court finds that plaintiff has failed to meet the first prong for granting

15   preliminary injunctive relief -- a strong likelihood of success on the merits of his action.  None of

16   the attachments to plaintiff's complaint indicate that any physician has found it medically

17   necessary that plaintiff be transferred from HDSP.  On the contrary, plaintiff's 2010

18   administrative grievance, which specifically sought plaintiff's transfer to another institution due

19   to his asthma, was denied based on plaintiff's refusal to take steroid inhalers, and his apparent

20   ability to distance himself from the smoke during Native American religious ceremonies.

21   Plaintiff has also failed to meet the second prong for granting preliminary

22   injunctive relief -- the possibility of irreparable harm should the relief be denied.  Although

23   plaintiff alleges that he was diagnosed with "high altitude syndrome" in 1987 (id. at 7), the

24   available medical evidence is very limited.  In support of his prior action in this court (included

25   as an attachment to the current complaint), plaintiff submitted copies of two Health Care Request

26   Forms, submitted by plaintiff on November 13 and 25, 2009, which alleged asthmatic

complications in response to the smoke, requested a renewal of plaintiff's Claritin prescription and a "lay-in chrono" so plaintiff could stay inside, and a transfer to a "non-smoking" prison. (Dkt. No. 1 at 18-20.) However, on December 8, 2009, in response to those requests, plaintiff was examined by a nurse who found "no shortness of breath," "chest clear all lobes 100% SAT," and "no resp, distress noted." (Id. at 20.)  The nurse diagnosed "smoke-induced dyspnea," and noted that plaintiff was symptomatic "only when exposed to smoke." (Id.)  Plaintiff also submitted a copy of another Health Care Request Form, dated 2010 (month is illegible), asserting exacerbation of his asthma due to dust coming from his cell vent.  (Id. at 21.)  There is no record of a follow-up medical appointment.  This limited medical information, viewed in the context of the information submitted by Dr. Lee, fails to demonstrate that plaintiff could suffer irreparable harm by the denial of injunctive relief.

The third prong supporting preliminary injunctive relief requires an assessment whether the equities weigh in plaintiff's favor.  Plaintiff has failed to present evidence demonstrating that transfer to another institution, or even another cell, is necessary to safeguard his health.  Absent such a showing, the equities favor maintaining the status quo until resolution of this action in its entirety.

The fourth prong supporting preliminary injunctive relief requires that the relief sought by plaintiff be in the public interest.  The public interest in conserving limited fiscal resources supports maintaining the status quo pending the outcome of this litigation.

For these reasons, this court finds that plaintiff has met none of the four prerequisites for granting preliminary injunctive relief.  Accordingly, the undersigned recommends that plaintiff's motion for preliminary injunctive relief be denied.

III.  Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's complaint on the ground that it fails to state a cognizable claim under the ADA or Section 1983.  (Dkt. No. 19.)  Plaintiff timely filed an opposition to the motion (Dkt. No. 20), with accompanying points and authorities (Dkt. No. 21);

1   defendants filed a reply (Dkt. No. 22).

2         A preliminary matter requires resolution.  After defendants filed their reply,

3   plaintiff filed a "response."  (Dkt. No. 24.)  Defendants move to strike plaintiff's response as an

4   unauthorized surreply.  (Dkt. No. 25.)  Plaintiff thereafter responded with a motion to strike

5   defendants' motion to strike.  (Dkt. No. 26.)  The Local Rules do not provide for a surreply, and

6   the court did not order one.  Local Rule 230(*l*) contemplates only the filing of a motion,

7   opposition and reply.  Moreover, pursuant to that rule, a motion is deemed submitted for decision

8   by the court twenty-eight days after service of the motion or when the reply is filed, whichever

9   comes first.  Therefore, defendants' motion was submitted for decision on the date defendants

10  filed their reply, January 20, 2012.  For these reasons, defendants' motion to strike plaintiff's

11  surreply is granted.  Plaintiff's "response" to defendants' reply will be disregarded.

12        A.  Legal Standards for Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

13        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6),

14  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

15  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

16  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide a "short and plain

17  statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see also

18  Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  In order to survive dismissal for

19  failure to state a claim, a complaint must contain more than "a formulaic recitation of the

20  elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to

21  relief above the speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007).

22  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual allegations as

23  true, it contains 'enough facts to state a claim to relief that is plausible on its face.'"  Coto

24  Settlement v. Eisenberg, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S.

25  Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads factual content

26  that allows the court to draw the reasonable inference that the defendant is liable for the

1   misconduct alleged.'"  Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th

2   Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949).  The court accepts "all facts alleged as true and

3   construes them in the light most favorable to the plaintiff."  County of Santa Clara v. Astra USA,

4   Inc., 588 F.3d 1237, 1241 n.1 (9th Cir. 2009).  The court is "not, however, required to accept as

5   true conclusory allegations that are contradicted by documents referred to in the complaint, and

6   [the court does] not necessarily assume the truth of legal conclusions merely because they are

7   cast in the form of factual allegations."  Paulsen, 559 F.3d at 1071 (citations and quotation marks

8   omitted).

9           In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court "may

10  generally consider only allegations contained in the pleadings, exhibits attached to the complaint,

11  and matters properly subject to judicial notice."  Outdoor Media Group, Inc. v. City of

12  Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted).  However,

13  under the "incorporation by reference" doctrine, a court may also review documents "whose

14  contents are alleged in a complaint and whose authenticity no party questions, but which are not

15  physically attached to the [plaintiff's] pleading."  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th

16  Cir. 2005) (citation omitted and modification in original).  The incorporation by reference

17  doctrine also applies "to situations in which the plaintiff's claim depends on the contents of a

18  document, the defendant attaches the document to its motion to dismiss, and the parties do not

19  dispute the authenticity of the document, even though the plaintiff does not explicitly allege the

20  contents of that document in the complaint."  Id.

21          The court's assessment of cognizable federal claims is also guided by the

22  principles of administrative exhaustion, wherein the underlying relevant administrative

23  grievances need not have identified every fact, defendant or legal theory, only that the allegations

24  therein may reasonably be construed to include the alleged wrongs and named defendants

25  identified in the suit.  See Jones v. Bock, 549 U.S. 199, 219 (2007); Griffin v. Arpaio, 557 F.3d

26  1117, 1120 (9th Cir. 2009).

1        B.  Plaintiff's Claims Pursuant to the Americans with Disabilities Act

2              Defendants move to dismiss plaintiff's claims made pursuant to the Americans

3  with Disabilities Act.  Defendants contend that plaintiff's claims are not cognizable under the

4  ADA because plaintiff is not alleging the denial of a benefit associated with any particular

5  service, program or activity.  Rather, argue defendants, plaintiff is simply challenging the quality

6  of his housing and medical care under Section 1983.

7        1.  Legal Standards for ADA Claim

8              Title II of the ADA provides that "no qualified individual with a disability shall,

9  by reason of such disability, be excluded from participation in or be denied the benefits of the

10  services, programs, or activities of a public entity, or be subjected to discrimination by any such

11  entity."  42 U.S.C. § 12132.  The ADA applies to inmates and parolees in the state correctional

12  system.  Armstrong v. Wilson, 124 F.3d 1019, 1022-24 (9th Cir. 1997).  "To state a claim of

13  disability discrimination under Title II, the plaintiff must allege four elements:  (1) the plaintiff is

14  an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive

15  the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either

16  excluded from participation in or denied the benefits of the public entity's services, programs, or

17  activities, or was otherwise discriminated against by the public entity; and (4) such exclusion,

18  denial of benefits, or discrimination was by reason of the plaintiff's disability."  Thompson v.

19  Davis, 295 F.3d 890, 895 (9th Cir. 2002), cert. denied, 538 U.S. 921 (2003) (citing Weinreich v.

20  L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

21        2.  Discussion

22              Plaintiff appears to satisfy the first element of an ADA claim, by being an

23  individual with a disability.  Plaintiff states that he is in HDSP's "chronic care program," with

24  disabilities of "an incurable chronic disease of asthma," as well as hypertension and "endstage

25  incurable chronic glaucoma" which has rendered plaintiff "legally blind in both eyes."  (Dkt. No.

26  17 at 3.)  Further, plaintiff's incarceration at HDSP demonstrates that he satisfies the second

1    element of an ADA claim, rendering him otherwise qualified to participate in the services,

2    programs and activities offered by HDSP and California Department of Corrections and

3    Rehabilitation ("CDCR").

4            Defendants assert that plaintiff fails to satisfy the third element of an ADA claim,

5    which requires that plaintiff demonstrate he was excluded from participation in, or denied the

6    benefits of, a specified service, program, or activity provided by HDSP/CDCR.  The court finds

7    defendants' argument too narrow, based on a literal construction of "services, programs, or

8    activities" as matters extraneous to a prisoner's routine activities of daily living.  The Supreme

9    Court has ruled that a prisoner may state a Title II claim based on "the alleged deliberate refusal

10   of prison officials to accommodate [a prisoner's] disability-related needs in such fundamentals as

11   mobility, hygiene, medical care, and virtually all other prison programs[.]"  U.S. v. Georgia, 546

12   U.S. 151, 157 (2006) (in holding that Title II abrogates state sovereign immunity, the Court noted

13   that plaintiff, a paraplegic prisoner, may be able to state a Title II claim premised, inter alia, on

14   his allegation that he could not turn his wheelchair around in his cell).  Moreover, a prisoner's

15   transfer to or from a particular prison may be relevant to an ADA claim if such transfer would

16   constitute a reasonable accommodation of plaintiff's disability.[1]  See e.g. Purcell v. Pennsylvania

17   Dept. of Corrections, 2006 WL 891449, *16 (W.D. Pa. 2006).  Therefore, the court finds that the

18   complaint appears to meet the third element of a Title II claim premised on plaintiff's allegations

19   that prison officials refuse to move plaintiff to another cell at HDSP, or transfer plaintiff to

20   another institution, despite the allegedly serious exacerbation of his asthma in his present

21   location.

22           However, plaintiff has failed to allege facts that meet the fourth element for a Title

23   II claim, viz., that the alleged failure to accommodate plaintiff was "by reason of the plaintiff's

24   _____

25           [1]  These considerations must be made within the context of the general rule that the
     discretion of prison authorities to administer correctional institutions normally outweighs the
     interest of an individual prisoner to be housed in a particular prison.  See Olim  Wakinekona, 461
26   U.S. 238 (1983).

disability," Thompson, 295 F.3d at 895.  Moreover, plaintiff cannot bring an ADA claim against

officials in their individual capacity (although a state official acting in his official capacity may

be a proper defendant pursuant to an ADA Title II claim).  See e.g. Miranda B. v. Kitzhaber, 328

F.3d 1181, 1187-88  (9th Cir. 2003).  The proper defendant in a Title II claim is the public entity

allegedly responsible for the discrimination.  The term "public entity," as encompassed by Title II

of the ADA, includes state prisons.  See Pennsylvania Dept. of Corrrections v. Yeskey, 524 U.S.

206, 210 (1998).

>        For these reasons, plaintiff's ADA claims must be dismissed.  However, with

these considerations in mind, the court will grant plaintiff leave to re-allege his Title II ADA

claims in an amended complaint.

>        C.  Plaintiff's Claims Pursuant to the Civil Rights Act, 42 U.S.C. § 1983

>        Defendants also move to dismiss plaintiff's Eighth Amendment claims.  The same

briefing applies.  (Dkt. Nos. 19-22.)

>        Pursuant to Section 1983, plaintiff alleges that defendant prison officials, despite

awareness of plaintiff's chronic asthma, failed to remedy specific housing conditions -- relative

to prison elevation, yard smoke, cell ventilation, and sewage leakage -- that have significantly

exacerbated plaintiff's asthma, thus demonstrating deliberate indifference to plaintiff's serious

medical needs in violation of the Eighth Amendment.  The claims in plaintiff's prior action filed

in this court also appear to include the alleged deliberate indifference by medical personnel to

plaintiff's serious medical needs.[2]

---

[2]  Plaintiff is not precluded, by the statute of limitations, from including those claims in
an amended complaint.  There is an effective four-year statute of limitations for prisoner civil
rights claims.  Section 1983 contains no statute of limitations.  Thus, federal courts apply the
state's personal injury statute of limitations, subject to any state tolling provisions that are not
inconsistent with federal law.  Wallace v. Kato, 549 U.S. 384, 387 (2007); Azer v. Connell, 306
F.3d 930, 935-36 (9th Cir. 2002).  California's statute of limitations for an action for a personal
injury caused by the wrongful or negligent act of another is two years from the date of accrual.
Cal. Civ. Proc. Code § 335.1.  Under California law, inmates sentenced "for a term less than life"
are provided two years of statutory tolling for damage claims during incarceration.  Id., §
352.1(a); Johnson v. State of California, 207 F.3d 650, 654 (9th Cir. 2000).  Accordingly, the

1        1. <u>Legal Standards for Eighth Amendment Claims</u>

2        The Eighth Amendment prohibits the infliction of "cruel and unusual

3    punishments," U.S. Const. amend. VIII, which encompasses the "unnecessary and wanton

4    infliction of pain," <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986); <u>see</u> <u>also</u> <u>Ingraham v. Wright</u>,

5    430 U.S. 651, 670 (1977); <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06 (1976).  Neither accident nor

6    negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not

7    inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

8    Unusual Punishments Clause."  <u>Whitley</u>, 475 U.S. at 319.

9        What is needed to show unnecessary and wanton infliction of pain "varies

10    according to the nature of the alleged constitutional violation."  <u>Hudson v. McMillian</u>, 503 U.S.

11    1, 5 (1992) (citing <u>Whitley</u>, 475 U.S. at 320).  To prevail on an Eighth Amendment claim, the

12    plaintiff must allege and ultimately demonstrate both an "objective component" ("[w]as the

13    deprivation sufficiently serious?"), and a "subjective component" ("[d]id the official[] act with a

14    sufficiently culpable state of mind?").  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  "The

15    objective component of an Eighth Amendment claim is . . . contextual and responsive to

16    'contemporary standards of decency.'"  <u>Hudson</u>, 503 U.S. at 8.  The plaintiff must allege and

17    show, objectively, that he suffered a "sufficiently serious" deprivation as a result of the

18    challenged conduct.  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994); <u>Wilson</u>, 501 U.S. at 298-99.

19    The plaintiff must also allege and show that, subjectively, each defendant had a culpable state of

20    mind in allowing or causing the plaintiff's deprivation to occur.  <u>Farmer</u>, 511 U.S. at 834.  The

21    subjective component is met by showing that the official knew of and disregarded an excessive

22    risk to the inmate's health or safety, viz., that the official was both aware of facts from which the

23    inference could be drawn that a substantial risk of serious harm exists, and drew such inference.

24    <u>Id.</u> at 837.

25    ────────────────

26    effective statute of limitations for most prisoners is four years (two year limitations period plus
two years statutory tolling).

1    Similarly, "deliberate indifference to serious medical needs of prisoners

2    constitutes 'unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97,104

3    (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by

4    WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  Deliberate indifference

5    may be shown when prison officials deny, delay, or intentionally interfere with medical

6    treatment, or may be shown by the way in which prison officials provide medical care.

7    Hutchinson v. United States, 838 F.2d 390, 393–94 (9th Cir. 1988).  However, "the indifference

8    to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical

9    malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d

10   458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

11        2. Discussion

12        As set forth above, to be cognizable under the Eighth Amendment, a claim must

13   allege that the defendant personally knew of and disregarded an excessive risk to plaintiff's

14   health or serious medical needs.  Here, the complaint alleges only that defendant McDonald

15   "knew" that plaintiff is an asthmatic and has high altitude syndrome, "by way of previous

16   meeting of the minds," pursuant to plaintiff's prior lawsuit.  (Dkt. No. 1 at 3.)  However, review

17   of the docket in that case, Burton v. McDonald, Case No. 2:10-cv-01281 GGH, reveals that the

18   complaint was never served on defendant McDonald.  Plaintiff further alleges, in the present

19   case, that defendant McDonald "continues to enforce the policies that encourage and injured

20   plaintiff" (Dkt. No. 1 at 3), and that defendant Gower, acting as McDonald's subordinate, was

21   responsible for "effecting Warden M. McDonald's policies. . . ." (Id. at 2.)  Review of the

22   attachments to the complaint indicate that defendant Gower signed the Second Level Response

23   "granting" plaintiff's most recent grievance (Log No. HDSP-11-01087), based on the plumbing

24   repair following plaintiff's complaint that raw sewage was seeping from the wall next to

25   plaintiff's toilet.  (Dkt. No. 1 at 9.)

26   ////

16

1          None of these allegations assert the requisite personal knowledge required to state

2   an Eighth Amendment claim against either named defendant.  The only supported allegation of

3   personal knowledge, that of defendant Gower, indicates that he believed the sewage problem had

4   been resolved.  Moreover, a supervisor may be liable only upon a showing that:  (1) he was

5   personally involved in the alleged constitutional deprivation, or (2) there is a sufficient causal

6   connection between the supervisor's allegedly wrongful conduct and the asserted constitutional

7   violation.  Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989) (citations omitted).  The court

8   finds that the complaint fails to make any allegations to support an Eighth Amendment claim

9   against either defendant McDonald or Gower.

10         Nevertheless, the substance of plaintiff's complaint may support a properly

11  alleged Eighth Amendment claim.  For example, the Supreme Court has found that an Eighth

12  Amendment deliberate indifference claim may be premised on a prisoner's allegation that

13  persistent exposure to second-hand, or environmental, tobacco smoke posed an unreasonable risk

14  of serious damage to the prisoner's future health.  Helling v. McKinney, 509 U.S. 25, 35 (1993).

15  Similarly, and "[u]nquestionably, subjection of a prisoner to lack of sanitation that is severe or

16  prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment."

17  Anderson v. County of Kern, 45 F.3d 1310. 1314 (9th Cir. 1995) (citing cases).  In addition,

18  courts have recognized that failure to transfer an inmate to a lower altitude institution, when such

19  transfer is medically indicated, may support an Eighth Amendment claim for deliberate

20  indifference to serious medical needs.  See e.g. Boston v. Garcia, 2012 WL 125280 (E.D. Cal.

21  Jan. 17, 2012).

22         These cases indicate that plaintiff may be able to state potentially cognizable

23  Eighth Amendment claims in a properly amended complaint.  Plaintiff must examine the official

24  decision-making concerning each condition he challenges, to identify those officials with a direct

25  and knowledgeable role in maintaining the adverse conditions of which plaintiff complains, viz.,

26  that each defendant personally knew of, and disregarded, conditions that have caused and/or are

1   causing an excessive risk to plaintiff's health or serious medical needs

2           For these several reasons, the court finds that the instant complaint must be

3   dismissed.  The court will, however, grant leave to file an amended complaint.  Although the

4   Federal Rules adopt a flexible pleading policy, a complaint must give fair notice to defendants

5   and state the elements of the claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v. Cmty

6   Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must identify with particularity each

7   defendant's alleged specific conduct which supports each element of plaintiff's deliberate

8   indifference claims.  Rizzo v. Goode, 423 U.S. 362, 371 (1976).  There can be no liability under

9   42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's

10  actions and the claimed deprivation.  Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980);

11  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations of

12  official participation in civil rights violations are not sufficient.  Ivey v. Board of Regents, 673

13  F.2d 266, 268 (9th Cir. 1982).

14          Local Rule 220 requires that an amended complaint be complete in itself without

15  reference to any prior pleading.  See also Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

16  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement

17  of each defendant must be sufficiently alleged.

18          Failure of plaintiff to file an amended complaint in accordance with this order will

19  result in a recommendation that this action be dismissed.

20  IV.  Conclusion

21          Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

22          1.  Defendants' motion to strike plaintiff's surreply (Dkt. No. 25) is granted.

23          2.  Plaintiff's motion to strike defendants' motion to strike (Dkt. No. 26) is

24  denied.

25          3.  Plaintiff's surreply (Dkt. No. 24) is stricken.

26          4.  Defendants' motion to dismiss the complaint (Dkt. No. 19) is granted.

18

1        5.  Plaintiff's complaint (Dkt. No. 1) is dismissed, with leave to file an amended

2   complaint.

3        6.  Within thirty days from the filing date of this order, plaintiff shall complete the

4   attached Notice of Amendment and submit the following documents to the court:

5        a.  The completed Notice of Amendment; and

6        b.  An original and one copy of the Amended Complaint.  Plaintiff's

7        Amended Complaint shall comply with the requirements of the Civil

8        Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of

9        Practice.  The amended complaint must bear the docket number assigned

10       to this case and be labeled "Amended Complaint."

11       7.  Failure of plaintiff to file an amended complaint in accordance with this order

12  will result in a recommendation that this action be dismissed.

13       8.  The Clerk of Court is directed to:  (a) randomly assign a district judge to this

14  action; and (b) send plaintiff, together with a copy of this order, a blank form for filing a prisoner

15  civil rights action in this court.

16       In addition, IT IS HEREBY RECOMMENDED that plaintiff's motion for

17  preliminary injunctive relief (Dkt. No. 11), be denied.

18       These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

23  objections shall be filed and served within 14 days after service of the objections.  The parties are

24  ////

25  ////

26  ////

1  advised that failure to file objections within the specified time may waive the right to appeal the

2  District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  July 13, 2012

4

5

6  KENDALL J. NEWMAN
   UNITED STATES MAGISTRATE JUDGE

7  burt2187.pi.mtd.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ERIC WILTON BURTON,

11          Plaintiff,                    No. 2:11-cv-2187 KJN P

12      vs.

13   M. McDONALD, et al.,                 NOTICE OF AMENDMENT

14          Defendants.

15   _____/

16          Plaintiff hereby submits the following document in compliance with the court's

17   order filed _____:

18          _____     Amended Complaint

19

20

21   _____        _____

22   Date                           Plaintiff

23

24

25

26

21